(No. 24460.—▮▮▮▮▮▮▮▮)

THE LINDNER AND BOYDEN BANK *vs.* LYLE WARDROP, Admr. *et al.*—(LYLE WARDROP, Admr., Appellee, *vs.* BERTHA NASH, Appellant.)

*Opinion filed December 15, 1938—Rehearing denied Feb. 8, 1939.*

JAMES N. CUMMINGS, for appellant.

LEO P. BAIRD, and F. W. RENNICK, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

On July 12, 1935, William Wardrop deposited $750 in the Lindner and Boyden Bank of Buda, Illinois, and received a certificate of deposit from the bank which read as follows: "William Wardrop or Bertha Nash has deposited in this bank seven hundred fifty and no/100 dollars payable to the order of either of them on the return of this certificate properly endorsed, with interest at the rate of 2½ per cent per annum," etc. On November 23, 1935, William Wardrop died intestate and Lyle Wardrop was appointed administrator of his estate. The administrator and Bertha Nash both claimed the deposit. The bank filed an interpleader suit against them and, upon hearing, the circuit court of Bureau county rendered a decree in favor of the administrator which the Appellate Court for the Second District affirmed. (291 Ill. App. 454.) The case comes to this court upon a certificate of importance.

William Wardrop furnished the money and received the deposit certificate and put it in his safety deposit box, where

it was found after his death. Bertha Nash knew nothing about the certificate, and it is admitted that she contributed nothing toward the deposit. The certificate in question was issued in renewal of one in like amount and payable in the same way to the same parties. Wardrop's next-door neighbor testified that about a year before Wardrop died he told the witness he had a paper in the bank which contained his own and Bertha Nash's names, and that he wanted her to have a part of his money. This witness was not informed as to the kind of paper Wardrop meant. The question presented for determination is whether, by the language of the certificate and the proven facts, appellant has a right to any part of the fund.

In *Telford* v. *Patton,* 144 Ill. 611, the court considered a paper reading as follows: "First National Bank of Springfield, Mo. May 1, 1889. L. J. Patton has deposited in this Bank $2600.00, payable to the order of himself, in current funds, on return of this certificate, one year after date, with six per cent interest for the time specified, and no longer. A. J. Clements, Cashier." This certificate was bought and paid for by one Samuel Telford, and the L. J. Patton mentioned as payee was shown to be a certain Livonia J. Patton, an old friend. The possession of the certificate was retained by Telford. Upon his death, suit was brought by Patton against the administrator to recover the possession of the certificate. In a very well-considered opinion the court found from such circumstances that there was no gift either in contemplation of death or *inter vivos,* as in the latter case there must be such a change of possession as to put it out of the power of the giver to repossess himself of the thing given. This case has never been overruled, and has been frequently cited in support of the principle that the deposit of one's own money in a bank in the name of another does not pass title to such other person where the depositor retains the evidence of the deposit, and the person

in whose name the deposit is made has no knowledge of it, and no means of withdrawing it. *Erwin* v. *Felter*, 283 Ill. 36.

In the present case no question of survivorship arises since the certificate does not so provide, and it does not otherwise come within the provisions of the statute (Ill. Rev. Stat. 1937, chap. 76, sec. 2) pertaining to joint rights and obligations.

The certificate does not recite which of the two mentioned deposited the money. It does not provide for the payment to both persons mentioned as depositing the money, and is not payable unless the certificate is produced and endorsed. In order to entitle either of the payees to get the money, possession of the instrument, and endorsement by one, is a minimum requirement. There is no question involved of a valuable consideration, and there is no evidence of a trust. There is no bequest, because it does not have the form requisite for a will, and there are no words of survivorship in the certificate that would authorize Bertha Nash to claim the fund under the statute. Bertha Nash could have demanded the money if she had been given possession of the certificate, and taken it to the bank, and endorsed it. Wardrop at any time could have taken the certificate to the bank, and, by endorsement, cashed it. The legal effect of the transaction was to put it in the power of Wardrop to draw the money out and protect the bank by his delivering the certificate properly endorsed, or to enable him to hand the certificate to Mrs. Nash to draw the money and protect the bank by delivering the certificate with her endorsement. When these different angles are considered, it is clear that the delivery of the certificate, and endorsement of either of the parties, would protect the bank in making payment, and since these two requisites are necessary to actually procure the money, no title of any kind could pass to Bertha Nash unless she was given the power to get

the money, which would not only require her endorsement, but her possession of the certificate of deposit. This possession she did not have.

What we have said has application to a state of facts in which the money involved was owned by the person procuring the certificate, as a different result might follow if the facts should disclose that both parties mentioned had contributed to the fund. However, in the situation as here presented, it narrows itself down to the point of determining who owned the money in the bank, and whether there has been a transfer of the title to that fund by gift, contract, bequest, trust relationship or otherwise. The only manner suggested by the facts in this case is a transfer, in whole or in part, by gift, and, as just pointed out, delivery of the money, or the thing that represents the money, is necessary to effect a gift.

Appellant relies upon *Engelbrecht* v. *Engelbrecht,* 323 Ill. 209, in support of her claim that she is tenant in common of the certificate, and, therefore, entitled to a judgment for one-half of the amount. There is quite a similarity in the form of the certificate in the case before the court and with those in the *Engelbrecht case,* in respect that each contained the following: "Payable to the order of either upon the return of this certificate properly endorsed ;" otherwise, not only was the language different, but the surrounding facts were sufficient to disclose the certificates in the *Engelbrecht case* were not a mere matter of convenience, but were based upon both parties contributing to the fund, and both being at all times part owners of the fund.

In the *Engelbrecht case* the parties were husband and wife; in this case they were not in any way related. In the *Engelbrecht case* the parties were joint tenants of farm property, and both contributed to the fund evidenced by the certificates; in the present case the parties were not jointly interested in any property, and Bertha Nash contributed nothing to the deposit, and no facts are disclosed

from which it might be inferred that she helped to create the fund.

In the *Engelbrecht case* the claim made was that the survivor was entitled to the whole fund as a joint tenant, but this claim was rejected by the court and directions given to pay the survivor one-half of the amount of the certificates upon the principle that where a note or certificate of deposit is made payable to two persons furnishing money, without designating the proportion, the law presumes they take in equal parts.

With respect to the certificates the court there said: "When Chris made the deposit of money in the name of himself and his wife and received the certificates of deposit payable to either of them he did not by this transaction give the money so deposited to his wife. There is nothing in the certificates that evidences any other intent than that the money was subject to withdrawal by either party for the convenience of the parties. At the time these deposits were made no contract was entered into which directed the bank to pay to the survivor of them whatever remained in the fund at the death of either party, and so the certificates do not come within the decisions of this court." The judgment giving Mrs. Engelbrecht part of the money was based upon her ownership of part of it when it was converted into a certificate of deposit.

Keeping in mind the rule in *Telford* v. *Patton, supra,* and the distinction pointed out in *Engelbrecht* v. *Engelbrecht, supra,* it becomes clear that the ownership of money, at the time the certificate of deposit is issued, may become a material and determining factor where the certificate is payable to either of two persons and there is no contract in favor of the survivor in case of death and no possession of the certificate by the surviving claimant. Where, as here, a certificate of deposit is made payable to either of two persons upon delivery of the certificate, and the money is all furnished by the one who retains possession of the

certificate, the title to such fund remains in such party furnishing the funds, unless, during his life, the certificate is delivered so as to enable the other, at any time thereafter, by its terms, to draw the money from the bank, there being no provision for survivorship, and no other means shown by which the other party could be entitled to the fund. In the *Engelbrecht case,* under similar circumstances, we held the claimant owned one-half of the fund at the time of the deposit, while in this case appellant owned no part of the money at the time of the deposit or at any other time. The cases of *Reder* v. *Reder,* 312 Ill. 209, and *Illinois Trust and Savings Bank* v. *VanVlack,* 310 id. 185, involve cases where direct provision was made for the survivor to take the fund, an element missing in the case at bar.

We think the decree of the circuit court and the judgment of the Appellate Court were correct, and the judgment of the Appellate Court is affirmed. *Judgment affirmed.*