(No. 25776.-

WALTER DUNN *et al.* Appellees, *vs.* HANNAH KIMMEL HEASLEY *et al.*—(HANNAH KIMMEL HEASLEY, Appellant.)

*Opinion filed December 12, 1940.*

A. F. MELVIN, and STONE & FOWLER, for appellant.

D. L. DUTY, and L. A. COLP, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Appellees Walter Dunn and Nellie Hunter, his mother, brought suit in the circuit court of Williamson county to reform a deed executed by Philip Kimmel and to have title to the 80-acre tract described in the deed declared to be in them. Trial was had before a jury at the request of appellant. The jury returned a verdict finding the issues in favor of appellees. The chancellor overruled motions for judgment notwithstanding the verdict and for a new trial, and entered a decree reforming the deed as prayed in the complaint. Because a freehold is involved, the appeal is brought directly to this court.

Appellant, Hannah Kimmel Heasley, contends the decree is erroneous and that reformation could not be ordered for the following reasons: First, that neither fraud, accident nor mutual mistake was proved; second, this was a voluntary settlement and in such a case equity will not reform a deed; third, neither delivery nor acceptance of the deed was proved; fourth, the court excluded proper evidence offered by defendants, and fifth, the court improperly instructed the jury.

On June 19, 1937, Philip Kimmel and his then wife, the appellant, drove to Creal Springs, Illinois. They went to the office of a notary public, R. M. Camden. Kimmel insisted on making a new deed conveying the 80 acres on which he and his wife lived. The evidence is meager and all that is shown as to the earlier deed is that it was destroyed. Kimmel was ill, very feeble and did not go into Camden's office but remained in the automobile. His wife gave Camden the instructions as to how the deed was to be drawn and she signed it in his office. Then she and Camden took the deed out to her husband and he signed and acknowledged it. She testified Kimmel did not have his glasses, that he could not read without them and that he signed the deed without reading it. On the other hand, the

notary, R. M. Camden, testified: "It seems to me he looked it over." The certificate of acknowledgment states that the grantors "signed, sealed and delivered the said instrument as their free and voluntary act." When they reached home, Kimmel gave the deed to appellant. She put it in a trunk which contained some of her husband's belongings. The next day she gave it to Kimmel and he read it over and returned it to her. She replaced it in the trunk where it remained until Kimmel died, June 24, 1937. Appellant and her son by an earlier marriage, Guy Lambert, were the defendants. They offered to prove what Kimmel said to his wife when he gave her the deed on June 19, 1937, and what was said by Kimmel and Lambert in a conversation they had on June 20, 1937. Objections to all this were sustained.

Nellie Hunter is a daughter of Kimmel by a former wife and, as the deed states, Walter Dunn is Nellie Hunter's son. A few days after Kimmel died, appellant took the deed to Camden who had prepared it and asked him to strike out the words of condition in the deed "provided that the grantee remain single, and in case of her remarriage or." On Camden's refusal, she went to her attorney in Harrisburg, H. R. Lightfoot. He obliterated the quoted words with x's and appellant recorded her deed thus altered, June 28, 1937. Appellant remarried April 8, 1939.

As originally drawn the deed was, in part, as follows: "The Grantors: Philip Kimmel, and Hannah Kimmel, his wife, of the Marion, in the County of Williamson, and State of Illinois, for and in consideration of One Thousand —— ($1000.00) —— Dollars in hand paid, conveys and warrant to Hannah Kimmel, of the of Marion, County of Williamson and State of Illinois, the following described real estate, to-wit: (Then follows the description.) * * * The Grantee: herein to have and hold above described premises, for and during her natural life, provided that the grantee remain single, and in case of her remarriage, or at her death, the above described premises, to revert to Nellie

Hunter, and at her death to revert to Walter Dunn, her son. Furthermore, the Walter Dunn, is to look after, and care for Nellie Hunter, during her natural life,"

If the deed, as originally executed, is in effect, appellant's interest in the propery terminated upon her remarriage, and title to the property is in appellees. As to this there can be no doubt, and appellant does not expressly dispute it. However, the argument is advanced that reformation must be denied because either fraud, accident or mutual mistake must be proved before a court of equity will grant reformation of an instrument and that none of these elements is present here. The jury and the chancellor were justified in finding that fraud was committed. Under the facts before us, appellant cannot admit that after her husband died she caused the deletion of a portion of the deed, which provision cut down her estate from an absolute to a conditional life estate, and had the deed, so altered, recorded, and at the same time attempt to deny the power of a court of equity to restore the provision so deleted. She contends this deed cannot be reformed because it was a voluntary conveyance. She relies on *Stanforth* v. *Bailey,* 344 Ill. 38, and *Marvin* v. *Kelsey,* 373 id. 589. Those were cases in which the voluntary deeds of conveyance failed to describe the land intended to be conveyed. No such question is presented here. Assuming there was a delivery, the alteration subsequently made was nugatory and could not affect rights of the appellees under the deed as originally drawn. (Tiffany, Law of Real Property, (3rd ed.) sec. 989.) Appellant cannot deny equity's power to reform the instrument so as to make it read according to its legal effect, where the discrepancy was the result of her own fraudulent act.

Appellant next contends there was no delivery of the deed, and, since delivery is essential to its validity, the deed never took effect and for that reason cannot be reformed. Whether an instrument has been delivered is a question of

intention merely, and a manual delivery is no longer necessary. There is a sufficient delivery if an intention appears that it shall be legally operative, however that intention may be indicated. If this intention is indicated, the fact that the grantor retains possession of the instrument is immaterial. (Tiffany, Law of Real Property, (3rd ed.) sec. 1034; *Otis* v. *Spencer,* 102 Ill. 622.) Many factors may be considered as bearing on the matter of intention, and several have been said to be indicative or to raise a presumption that the deed either has or has not been delivered. Thus an acknowledgment by the grantor is entitled to some weight as tending to show a delivery, especially where the certificate of acknowledgment, as here, recites in express terms that the grantors delivered the instrument. And the presumption of delivery is stronger if the acknowledgment is made in the presence of the grantee, as is true in this case with respect to appellant. (Tiffany, Law of Real Property, (3rd ed.) sec. 1043.) That the deed or instrument is in the possession of the grantee is usually referred to as raising a presumption that it has been delivered. (*White* v. *Smith,* 338 Ill. 23.) On the other hand, the fact that the instrument remains in the possession of the grantor raises a presumption it has not been delivered. (*Patten* v. *Knowe,* 354 Ill. 156.) That factor is of little significance here. The grantor handed the deed to appellant and she placed it in a trunk containing some of his belongings. Kimmel was in very poor health and appellant must have had access to the trunk. She placed the deed in the trunk June 19, got it out the next day, and had it in her possession soon after Kimmel died. There is nothing in the record to show he did not intend the deed to be legally operative when he handed her the instrument, properly executed and acknowledged. It is further the rule that in cases of voluntary settlement, the presumption is in favor of delivery, and the burden is on the grantor, or those claiming through him, to show want of delivery. (*Dry* v. *Adams,* 367 Ill.

400; *Standard Trust Bank* v. *Carlson,* 315 id. 451.) After considering all these circumstances, we conclude the deed was properly found to have been delivered. There were several factors tending to show a delivery and nothing to indicate that the grantor intended the conveyance should not be immediately operative.

We cannot agree the deed was ineffectual for want of an acceptance. Appellant contends that although acceptance will be presumed where the deed is beneficial to the grantee, acceptance must be proved when the deed imposes a burden on him. She points out that Walter Dunn was required "to look after and care for Nellie Hunter during her natural life." The answer to this contention is found in *Healy* v. *Stevens,* 347 Ill. 202, in which the conveyance was also onerous to the grantees. We held that the grantees had proved acceptance by appearing in that case and insisting upon the validity of the deeds. It is there said: "It is immaterial that the grantees, or any of them, may not have known of the existence of the deeds until after the death of the grantor, and an acceptance was not necessary before her death." In addition, no burden was imposed by the deed on the other two grantees.

The court correctly excluded appellant's testimony as to what the grantor said to her when he handed her the deed. By the terms of section 5 of the Evidence act, (Ill. Rev. Stat. 1939, chap. 51, par. 5,) she was incompetent to testify "as to any conversation between them during coverture." By depositing the deed in Kimmel's trunk she was not acting as his agent within the meaning of the exception to that section.

The court rejected the offered testimony of defendant Guy Lambert concerning a conversation he had with Kimmel June 20, 1939, the day after the execution of the deed. The reason indicated by the court was that he was incompetent because of section 2 of the Evidence act. (Ill. Rev. Stat. 1939, chap. 51, par. 2.) The court erred in this re-

spect, for appellees, the adverse parties, were not suing as heirs but as grantees. In such cases the disability described in section 2 does not apply. (*Shipley* v. *Shipley*, 274 Ill. 506.) However, this offered testimony was not relevant. The issue as specifically framed by the pleadings was whether or not there was a delivery June 19. The offered testimony was to the effect that on June 20, 1937, Kimmel was dissatisfied with the part of the deed which terminated his wife's life estate if she remarried and that he stated he wanted a new deed made and that in the event anything should happen to him before the new deed was executed, he wanted that provision stricken before the deed was recorded. That testimony was irrelevant if there was a delivery on June 19, 1937, and, furthermore, it did not tend to show a belief on the part of Kimmel that the deed was inoperative at that time. Thus it was not material to the issue of delivery.

Appellant complains that three given instructions requested by appellees ignored the element of delivery. An instruction given at the request of appellant correctly instructed the jury as to the requirement of delivery. This was a suit in equity and the verdict of the jury was advisory, only. The decree shows it was not based upon the verdict of the jury, alone, but was the result of an independent consideration of the evidence by the court in connection with the verdict of the jury. In such a case, this court will not reverse the decree for any such alleged error in the giving of instructions. *Riehl* v. *Riehl*, 247 Ill. 475; *Turnes* v. *Brenckle*, 249 id. 394.

We find no error in the record which would warrant a reversal. The decree of the circuit court is, therefore, affirmed.

*Decree affirmed.*

Mr. JUSTICE SHAW, specially concurring: I agree with the conclusion reached but not with all that is said in this opinion.